UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SHANEEKQUA NIEVES

        Plaintiff,

        v.                               **REPORT AND RECOMMENDATION**
                                                08-CV-0311 (TJM)

MICHAEL J. ASTRUE[1]
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I. Introduction

Plaintiff Shaneekqua Nieves brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI").[2] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying her application for benefits was not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

For the reasons set forth below, the Court finds the Commissioner's decision is not supported by substantial evidence and not determined in accordance with the applicable law. Therefore, the Court recommends that the Plaintiff's motion for judgment on the pleadings be granted and Defendant's cross-motion for judgment on the

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit.
[2] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated May 8, 2009.

pleadings be denied.[3]

## II. Background

On October 26, 2005, Plaintiff, then 27 years old, filed an application for SSI, claiming disability since October 26, 2005, because of a social anxiety disorder, a manic disorder, post-traumatic stress syndrome, and migraine headaches (R. at 35-38, 47-48).[4] Her application was denied initially on January 10, 2006 (R. at 25-29). Plaintiff filed a timely request for a hearing on February 16, 2006 (R. at 9, 30).

On November 27, 2007, Plaintiff and her attorney appeared before the ALJ (R. at 208-24).The ALJ considered the case *de novo* and, on December 7, 2007, issued a decision finding Plaintiff was not disabled (R. at 11-20). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on February 20, 2008 (R. at 5-8). On March 19, 2008, Plaintiff filed this action disputing her disability determination.

Based on the entire record, the Court finds that the ALJ failed to properly assess the medical opinions, and he failed determine the relevant mental demands of Plaintiff's past work.

## III. Discussion

### A. Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v.

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).
[4] Citations to the underlying administrative record are designated as "R."

Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[5] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520.

**B. Analysis**

    **1.    The Commissioner's Decision**

The ALJ followed the sequential analysis and at step one concluded Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 26, 2005 (R. at 16). At step two, the ALJ found Plaintiff had the following severe impairments: "depressive disorder and anxiety/panic disorder." Id. Using the "special technique" prescribed by the regulations, the ALJ concluded that Plaintiff's mental impairments did not meet or equal a listed impairment at step three (R. at 16-17). The ALJ found Plaintiff's statements of her symptoms and limitations "not entirely credible" (R. at 18). Considering the various medical opinions, the ALJ did not give any weight to the opinions of Plaintiff's treating psychiatrist, Dr. Martha Tymeson (R. at 19); did not explain what weight he assigned to the opinions of examining State psychologist, Dr.

---

[5] First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

Mary Ann Moore (R. at 19-20); and gave controlling weight to the opinions of non-examining State psychologist, Dr. Ed Kamin (R. at 20). At step four, the ALJ found Plaintiff had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels" and was "limited to [the] mental demands of unskilled work which includes understanding, carrying out and remembering simple instructions; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting" (R. at 17). Based upon this RFC, the ALJ concluded Plaintiff could perform her past work as a cashier, which did "not require the performance of work-related activities precluded by [her RFC]" (R. at 20). The ALJ concluded his analysis at step four and found Plaintiff was not disabled within the meaning of the Act. Id.

### 2. Plaintiff's Claims

Plaintiff argues that (a) the ALJ failed to properly assess the medical opinions; (b) the RFC is not supported by substantial evidence; and (c) the ALJ failed to determine the mental demands of Plaintiff's past work. Plaintiff's Brief, p. 5-10.

#### a. The ALJ Failed to Properly Assess the Medical Opinions

Plaintiff argues that the ALJ improperly evaluated medical opinions from Dr. Tymeson, Dr. Kamin, and Dr. Moore. Plaintiff's Brief, pp. 7-8.

After carefully reviewing the record, the Court concludes that the ALJ improperly evaluated the medical opinions in this case. First, the ALJ failed to grant greater weight to the opinions of the two sources who examined Plaintiff, including Plaintiff's treating physician. For example, Dr. Tymeson and Dr. Moore agreed that Plaintiff was limited in functioning in a work setting at a consistent pace (R. at 129) or maintaining a regular

5

work schedule (R. at 107); making simple decisions (R. at 129) or appropriate work decisions (R. at 107); and interacting appropriately with others (R. at 129) or relating adequately with co-workers and the public (R. at 107). In contrast, Dr. Kamin, a non-examining State consultant disagreed (R. at 109-12). Dr. Kamin opined that Plaintiff could perform on a schedule, maintain attendance and be punctual within normal tolerances; could make simple decisions; could interact appropriately with the public; and could get along with co-workers (R. at 109-10). However, the regulations clearly direct an ALJ to "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." 20 C.F.R. § 416.927(d)(1). In this case, the ALJ erred in failing to grant greater weight to the consistent opinions of the examining sources: Dr. Tymeson and Dr. Moore.

Second, the ALJ improperly rejected the opinions of Plaintiff's treating physician, Dr. Tymeson. The treating physician rule requires an ALJ to grant controlling weight to a treating physician's opinions when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence." 20 C.F.R. § 416.927(d)(2); see also Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999). In this case, Dr. Tymeson's opinions were supported by diagnostic techniques and consistent with other substantial evidence. For example, Dr. Tymeson's opinions were supported by the mental status examinations performed by Plaintiff's general physician, her treating therapist, and her own examinations (R. at 86-87, 135-36, 143-99). And, as discussed above, Dr. Tymeson's opinions were consistent with other substantial evidence, particularly Dr. Moore's opinions (R. at 104-08). Although Dr. Kamin's opinions were inconsistent with Dr. Tymeson's opinions in several

6

specific areas, they were not entitled to greater weight in this case because they lacked supporting explanation. The regulations state: "because nonexamining sources have no examining or treating relationship with [the claimant], the weight [the ALJ] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 416.927(d)(3). In his report, Dr. Kamin relied upon Dr. Moore's examination of Plaintiff but offered no explanation for rejecting Dr. Moore's opinions that Plaintiff was limited in making work decisions, interacting with co-workers and the public and maintaining a work schedule (R. at 111). Given the supporting evidence in the record and agreement of Dr. Moore, the Court concludes that the ALJ's rejection of the treating physician's opinions is not supported by substantial evidence in this case. Furthermore, upon remand, the ALJ must address the core question posed by the treating physician rule: whether Dr. Tymeson's opinions were "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Additionally, the Court notes that the ALJ gave several reasons for rejecting Dr. Tymeson's opinions, but none of the reasons are supported by substantial evidence in the record. For example, the ALJ rejected Dr. Tymeson's opinion that Plaintiff was limited in maintaining socially appropriate behavior because the "evidence is devoid of such extreme behavior" (R. at 19). However, the record supports Dr. Tymeson's opinion that Plaintiff has difficulty maintaining socially appropriate behavior. See (R. at 154-55) (Plaintiff describes physically lashing out when her personal space is invaded); (R. at 173) (Plaintiff describes yelling at her neighbor in her apartment building); (R. at 190)

(describing Plaintiff as "confrontative" with her therapist, and exhibiting "mood dependant behavior" and "avoidance behavior" when she feels "in crisis"); (R. at 220) (Plaintiff's testimony of her behaviors in a work setting, included crying, getting upset, sitting in a corner and not wanting to do anything, missing work, and arriving late). Similarly, the ALJ noted that Dr. Tymeson's report was completed "after only one examination" (R. at 19). First, the Court notes that it is undisputed that Dr. Tymeson was Plaintiff's treating physician. More importantly, the record shows that Plaintiff's therapist, Ms. Amy Kilpatrick, LMSW and Dr. Tymeson, completed Plaintiff's employability assessment on May 30, 2007, after approximately five contacts combined, including extensive mental status examinations (R. at 128-29, 148-52, 154-58, 168-71, 173, 177-78, 184, 200-01). Finally, the ALJ noted that Plaintiff's Global Assessment of Functioning ("GAF") score increased from a low of 52 on March 23, 2007 to a high of 60 on August 10, 2007 (R. at 19). However, each of these scores indicates the same level of moderate symptoms or moderate functional difficulties. Diagnostic and Statistical Manual of Mental Disorders, Text Revision 34 (4th ed. 2000) (listing scores from 51 through 60 as indicating "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., no friends, conflicts with peers or co-workers)"). On remand, even if the ALJ does not grant controlling weight to the treating physician's opinions, he must "always give good reasons . . . for the weight [he] give[s] [a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

The ALJ also erred in giving Dr. Kamin's opinions "controlling weight" (R. at 20). Although a nonexamining physician's opinion "may be entitled to greater weight than the

opinions of treating or examining sources," it is true only in "appropriate circumstances." SSR 96-6p, 1996 WL 374180, at *3. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180, at *2. Thus, the regulations favor the opinions of sources who have a treating relationship with the claimant and sources who have examined the claimant. 20 C.F.R. §§ 416.927(d)(1)-(2). As discussed above, the weight assigned to a nonexamining source's opinions "depend[s] on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 416.927(d)(3). Dr. Kamin's report fails to explain his opinions, particularly why they vary from the examining sources opinions (R. at 111). Moreover, the opinions of both the examining psychologist and the treating psychiatrist are contrary to Dr. Kamin's opinions (R. at 104-08, 128-29). Assigning controlling weight to a non-examining psychologist in these circumstances is error. See 20 C.F.R. §§ 416.927(d)(1), 416.927(d)(3), Upon remand, the ALJ must assess Dr. Kamin's opinions using the regulatory factors and assign weight only to the degree that Dr. Kamin's opinions are explained. 20 C.F.R. § 416.927(f) ("When we consider the opinions of nonexamining sources, we apply the rules in [20 C.F.R. § 416.927](a) through (e) . . ."); 20 C.F.R. § 416.927(d)(3).

     Finally, the ALJ's failure to explain the weight he gave to Dr. Moore's opinions is also legal error. 20 C.F.R. §§ 404.1527(f)(ii) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . ."). Although the ALJ mentioned Dr. Moore's examination of Plaintiff (R. at 19), he failed

to explain what weight he assigned to her opinions. On remand, the ALJ must also consider and explain the weight he gives to Dr. Moore's opinions.

### b. The ALJ's RFC is Not Supported By Substantial Evidence

Plaintiff argues that the ALJ's RFC finding was "contradicted [b]y the opinions of every single psychiatric source in this record, including treating source, examining consultative source and non-examining consultative source." Plaintiff's Brief, p. 3.

Because the ALJ's RFC determination is necessarily unsupported by substantial evidence based on the Court's findings above, on remand, the ALJ should redetermine the RJC after engaging in an analysis consistent with this opinion.

### c. The ALJ Improperly Analyzed Plaintiff's Past Relevant Work

Finally, Plaintiff argues that the ALJ erred when he found Plaintiff could perform the mental demands of her past work as a cashier but did not specify the mental demands of that past work, as required by Social Security Ruling ("SSR") 82-62. Plaintiff's Brief, p. 9. Plaintiff argues that the ALJ's decision did not "contain basic essential factual findings" about the nature of Plaintiff's past relevant work. Plaintiff's Brief, p. 10.

"Pursuant to both case law and [SSR] 82-62, in order to determine at step four whether a claimant is able to perform her past work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities." Kerulo v. Apfel, 1999 WL 813350, at *8 (S.D.N.Y. Oct. 7, 1999) (citations omitted). An ALJ may rely on the claimant's statements, which "are generally sufficient

for determining the skill level; exertional demands and nonexertional demands of such work." SSR 82-62, 1982 WL 31386, at *3 (S.S.A.); see, e.g., Johnson v. Astrue, 2009 WL 890669, at 10-11 (finding the ALJ's assessment of the Plaintiff's ability to do her past work proper because the ALJ relied on the Plaintiff's description of the relevant work demands of her past work). "Adequate documentation" will include "information about those work demands which have a bearing on the medically established limitations." SSR 82-62, 1982 WL 31386, at *3 Thus, when a claimant has limitations due to a mental or emotional impairment, "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." SSR 82-62, 1982 WL 31386, at *3; see also Kerulo, 1999 WL 813350, at *9 (finding error where the ALJ found the Plaintiff's past relevant work did not involve "high levels of stress" but neither the testimony nor the documentary record provided evidence about the nature of her past work).

In this case, the ALJ found Plaintiff was capable of performing her past relevant work as a cashier, which he described as follows:

> She assisted in serving food and handling the cash register. She was assigned taking boxes of hotdogs or French fries from the cooler to the front serving area (Exhibit 1E). The claimant has reported working as a cashier for hospital cafeteria. She indicated this job ended only because of child care issues (Exhibit 10F).

(R. at 20). The ALJ concluded that Plaintiff's past work as a cashier did "not require the performance of work-related activities precluded by the claimant's [RFC]." Id.

After carefully reviewing the record, including Plaintiff's hearing transcript, the Court concludes that although the record describes some exertional demands of Plaintiff's past work, it provides no evidence of the non-exertional mental demands of her past work. See (R. at 49) (describing the exertional demands of Plaintiff's cashier work, including lifting and carrying hotdogs and French fries); (R. at 57-63) (describing exertional demands of past work); (R. at 83) (describing work demands as "food packaging," "bread slicer," "served food," and "filled prescriptions"). In contrast, the record reveals that Plaintiff alleged limitations associated with the mental demands of work. See, e.g., (R. at 212-13, 217, 219-20) (describing severe difficulty dealing with other people, particularly supervisors, difficulty dealing with workplace stresses, and difficulty completing assigned tasks). Plaintiff's alleged mental limitations and the lack of evidence in the documentary record should have prompted the ALJ to inquire into the mental demands of Plaintiff's past work. The ALJ's failure to "make a specific and substantial inquiry into the relevant . . . mental demands associated with the claimant's past work" is error in this case and necessitates remand. Kerulo, 1999 WL 813350, at *9; see also Steficek v. Barnhart, 462 F.Supp.2d 415, 421 (W.D.N.Y. 2006) (remanding, in part, because the ALJ "made no findings as to the mental demands" of the Plaintiff's past work, despite finding the Plaintiff suffered from various mental and emotional impairments).

## IV.   Conclusion

Based on the foregoing, the Court recommends that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C.

Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED: July 27, 2009

Syracuse, New York

## Orders

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir.1989); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir.1988).

**SO ORDERED**.

DATED: July 27, 2009

Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge